UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ASHLEY STEWART** | **CIVIL ACTION** |
| **VERSUS** | |
| **SHERIFF SID J. GAUTREAUX, III, ET AL.** | **NO.: 12-00594-BAJ-RLB** |

## RULING AND ORDER

Before the Court is a **Motion to Dismiss (Doc. 2)**, filed by Defendants Sheriff Sid J. Gautreaux, III ("Gautreaux") and Captain Johnny Scott ("Scott") (collectively "Defendants"), seeking an order from this Court dismissing Plaintiff Ashley Stewart's ("Stewart") claims, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Stewart opposes the motion. (Doc. 3.) Defendants filed a memorandum in response to Stewart's memorandum in opposition. (Doc. 4.) Oral argument is not necessary.

**I.   Background**

Stewart filed this lawsuit against Defendants pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Doc. 1-1, ¶¶ 34-35.) According to her complaint, on January 23, 2012, approximately two months after she was arrested and incarcerated, a state court judge determined that Stewart was being held under the wrong Bill of Information. (Doc. 1-1, ¶¶ 6, 8.) On January 26, 2012, the judge dismissed the

charges against her. (Doc. 1-1, ¶ 10.) However, after the court hearing, Stewart was returned to East Baton Rouge Parish Prison, where she remained incarcerated for an additional month, or until February 24, 2012.[1] (Doc. 1-1, ¶¶ 11, 19.) Stewart alleges that, despite completing the necessary paperwork and making multiple inquires regarding her continuing incarceration, Defendants refused to release her. (Doc. 1-1, ¶¶ 12-15.) She further alleges Scott, who "is over booking and records . . . and prison transfers," failed to respond to her multiple inquires. (Doc. 1-1, ¶ 15.) According to Stewart's complaint, "a person not employed with by [sic] Sheriff" eventually obtained a copy of the state court docket sheet and minute entry and presented them to Scott "or those over whom he has supervision."[2] (Doc. 1-1, ¶¶ 17-18.) As a result, she was released from prison. (Doc. 1-1, ¶ 19.)

Stewart alleges Defendants acted with deliberate indifference to her Fourth, Fifth, Eighth, and Fourteenth Amendment rights when they failed to release her from the East Baton Rouge Parish Prison immediately after the state court judge dismissed the charges against her. (Doc. 1-1, ¶¶ 10, 19.) Stewart further alleges Defendants acted negligently, and are liable under the doctrines of *respondeat superior* and *res ipsa loquitur*. (Doc. 1-1, ¶¶ 30-33.) She seeks damages, attorney's fees, and costs. (Doc. 1-1, ¶¶ 36-37.)

---

[1] Stewart's complaint alleges that, due to overcrowding at the East Baton Rouge Parish Prison, she was transferred to Lake Providence, Louisiana twice during her incarceration. (Doc. 1-1, ¶¶ 7, 16.) She does not state, however, the name of the facility in which she was housed.

[2] Stewart does not disclose the identity of the "person not employed with by [sic] Sheriff" who allegedly obtained a copy of the state court docket sheet and minute entry, nor does she identify the Sheriff's Office employee who allegedly received the state court docket sheet and minute entry from this person.

As to the instant motion, Defendants seek an order from this Court dismissing Stewart's claims, pursuant to Rule 12(b)(6). Defendants argue that Stewart has failed to state a claim under Section 1983. Specifically, Defendants contend that Stewart has failed to state viable individual capacity and official capacity claims against them. In the alternative, Defendants argue that they are immune from suit pursuant to the doctrine of qualified immunity.

In opposition, Stewart argues that although some discovery is necessary to establish her claims, she has sufficiently put Defendants on notice of her Section 1983 claims. She further contends that she is "willing to amend" to cure any deficiencies in her complaint. (Doc. 3, pp. 5, 7.)

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555.

Furthermore, the Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (internal citations omitted). When a complaint fails to satisfy these principles, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (2007) (quoting *Twombly*, 550 U.S. at 558).

### III. Analysis

#### A. Stewart's Individual Capacity Claims Against Gautreaux and Scott

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S.

4

1 (1980)). "A person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights; and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).

For a legal principle to be clearly established, "we must be able to point to controlling authority - or a robust consensus of persuasive authority - that defines the contours of the right in question with a high degree of particularity" and that places the statutory or constitutional question "beyond debate." *Waganfeald v. Gusman*, 674 F.3d 475, 483-484 (5th Cir. 2012) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011*); Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). A defendant violates clearly established law only if "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he

is doing violates that right." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083 (internal brackets and quotation marks omitted)); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."), *overruled in part on other grounds* by *Pearson*, 555 U.S. at 236. When a defendant asserts qualified immunity, the plaintiff has the burden of proving that it is inapplicable. *Id.* (citing *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)).

### 1. There is a Clearly Established Right to Timely Release From Prison

Detention of a prisoner for over "thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." *Porter*, 659 F.3d at 445 (quoting *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980)); *see also Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010) (stating that "the due process clause is implicated in cases of continued incarceration . . . beyond the term of a court-ordered sentence"); *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1969) (internal citations and footnote omitted) ("[w]hile not a surety for the legal correctness of a prisoner's commitment, [a jailer] is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release.").

Here, Stewart alleges that she was incarcerated for 30 days after a state court judge dismissed the charges against her. Stewart's complaint does not specifically allege that Defendants continued to detain her despite the absence of any pending charges or continuing authority to do so. However, when viewing the facts in the light most favorable to Stewart, the Court concludes Stewart's constitutional right to timely release from prison may have been violated. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) ("Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff . . ."). Thus, the remaining issue is whether Gautreaux's and Scott's actions, in light of their duty to ensure Porter's timely release from prison, were objectively unreasonable.

### 2. Stewart's Complaint Fails to Allege Sufficient Facts to Demonstrate that Gautreaux's Actions Were Objectively Unreasonable

Stewart's complaint alleges Gautreaux liable under the doctrine of *respondeat superior*. (Doc. 1-1, ¶ 32.) However, supervisory officials cannot be liable pursuant to Section 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that casually result in the constitutional injury." *Porter*, 659 F.3d at 446 (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

"In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id.* (quoting *Gates*, 537 F.3d at 435) (internal quotation marks and citation omitted, alternations and emphasis in original)). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.* (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (internal quoting marks omitted, alteration in original) (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997))). A mere showing of generalized risk is insufficient to establish deliberate indifference; rather the plaintiff must show that a reasonable policy maker would conclude that the rights deprivation that occurred was a plainly obvious consequence of his decision. *Bryan Cty.*, 520 U.S. at 411.

Here, Stewart's complaint generally alleges that "an employer is liable . . . for the tortious acts committed against third parties by its employees . . . pursuant to La. C.C. arts. 2317 and 2320." (Doc. 1-1, ¶ 32.) However, her complaint does not allege Gautreaux acted with deliberate indifference. Indeed, Stewart's complaint is void of any facts related to Gautreaux. Thus, her complaint fails to establish any action by Gautreaux, or that his action(s) were objectively unreasonable. Further, to the extend Stewart is attempting to invoke this Court's supplemental jurisdiction over her pendant state law claim under the doctrine of *respondeat superior*, the

Court declines to exercise jurisdiction over such. See 28 U.S.C. § 1367(c)(3); Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989).

In opposition to the motion to dismiss, Stewart concedes that "[w]hether there was a policy and practice in place at the East Baton Rouge Parish Jail pertaining to the holding or imprisonment or persons, which policy was violated and which caused or contributed to the injuries, is unknown at this time." (Docs. 3, p. 4; 1-1, ¶ 27.) Stewart further states that she is "willing to amend," and includes "[a]mended claims" in her memorandum in opposition.³ (Doc. 3, p. 7.) However, Stewart did not request

---

³Stewart's proposed "amended claims" are as follows:

THIRD CLAIM FOR RELIEF
II.
Captain Johnny Scott was working for Sheriff Sid J. Gautreaux, III, at the East Baton Rouge Parish Jail and the Sheriff is responsible for the training of Captain Johnny Scott. Sheriff Sid Gautreaux violated Plaintiff's constitutional rights in that Captain Johnny Scott was inadequately trained; he held the Plaintiff without probable cause and against her will and failed to provide any due process which constitutes an arrest, seizure and search all in violation of the 4th, 5th, 6th and 14th Amendment Rights of the Plaintiff; the lack of due process, seizure and imprisonment arose under circumstances that constitute a usual and recurring situation with which a jailer and Sheriff managing a jail must deal. The inadequate training demonstrates a deliberate indifference on the part of the employer towards persons with whom Captain Johnny Scott must come into contact; and there is a direct causal link between the constitutional deprivation and the inadequate training.
III.
Captain Johnny Scott was working for Sheriff Sid J. Gautreaux, III, and under the supervision of Sheriff Gautreaux, who violated Plaintiff's constitutional rights in that Captain Johnny Scott was inadequately supervised; he held the Plaintiff without probable cause and against her will and failed to provide any due process which constitutes an arrest, seizure and search all in violation of the 4th, 5th, 6th and 14th Amendment Rights of the Plaintiff; the lack of due process, seizure and imprisonment arose under circumstances that constitute a usual and recurring situation with which a jailer and Sheriff managing a jail must deal. The inadequate supervision demonstrates a deliberate indifference on the part of the employer towards persons with whom the jailer come into contact; and there is a direct causal link between the constitutional deprivation and the inadequate supervision.
IV.
Captain Johnny Scott was working for Sheriff Sid J. Gautreaux, III, who was negligent in hiring in that Captain Johnny Scott did not have the training and background to properly manage booking and records. He is further in charge of prisoner transfers. He failed to act on the repeated Plaintiff without probable cause and against her will and failed to provide any due process which constitutes an arrest, seizure and search all in violation of the 4th, 5th, 6th and 14th Amendment Rights of the Plaintiff; the lack of due process, seizure and imprisonment arose under circumstances that constitute a usual and recurring situation with which a jailer and Sheriff managing a jail must deal; the inadequate supervision demonstrates a deliberate indifference on the part of the employer towards persons with whom the jailer must come into contact and there is a direct causal link between the constitutional deprivation and the negligent hiring.

leave to amend her complaint[4], nor did she file a separate motion for leave to amend her complaint. Further, even if the Court permitted Stewart to amend her complaint, her "amended claims" would not survive a Rule 12(b)(6) attack.

Stewart's proposed "amended claims" allege that Scott was "inadequately trained" and "inadequately supervised" by Gautreaux. A supervisor may be liable for failure to supervise or train if: (1) the supervisor either failed to supervise or train the subordinate official; (2) a casual link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id.* (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)). However, proof of more than a single instance of lack of supervision or lack of training causing a violation of constitutional rights is required before such can constitute deliberate indifference. *See Lewis v. Pugh*, 289 Fed. Appx. 767, 772 (5th Cir. 2008) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 458 (5th Cir. 2001).

---

V.
Sheriff Sid J. Gautreaux, III, is the rule and policy maker for the East Baton Rouge Parish Jail. The Sheriff has a duty to enact policies and rules that prevent individuals with no charges pending and no arrest and no cause to be jailed to be so jailed. As the Sheriff of East Baton Rouge, Sheriff Sid J. Gautreaux failed to enact any policy and practice in place at the East Baton Rouge Parish Jail pertaining to the holding or imprisonment of persons that would have allowed the Plaintiff to be released or not held with no probable cause, no arrest and no cause for same. If such policy or rule was in place, which policy was violated by Captain Johnny Scott and which caused or contributed to the injuries, the Sheriff failed to enforce the policy. In the alternative, it was unreasonable to implement, post and require Captain Johnny Scott to follow an ineffective policy and/or fail to follow an effective policy. The lack of effective policy/rules established by the Sheriff caused the constitutional deprivation in this case and the damages to the Plaintiff.

[4]*See e.g.* Doc. 3, p. 5 ("Plaintiff is ready to amend to cure the mistake."; Doc. 3, p. 7 (". . . although the Plaintiff has not had discovery, the Plaintiff is willing to amend."); Doc. 3, p. 8 ("If the Court requires other amendments, the Plaintiff stands willing to make those amendments."); Doc. 3, p. 12 ("Should this Court find that a cause of action has not been stated, the Plaintiff is prepared to amend.").

To establish deliberate indifference, the plaintiff must generally demonstrate that the supervisor had notice of a pattern or prior acts "fairly similar to what ultimately transpired." *Id.* (citing *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). See also *Connick*, 131 S. Ct. at 1360 ("[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Here, Stewart's proposed "amended claims" fail to allege that Gautreaux had notice of a pattern of similar constitutional violations by subordinate employees. Instead, her proposed "amended claims" merely allege that Scott was "inadequately trained" and "inadequately supervised" by Gautreaux. Such conclusory allegations are insufficient, and do not demonstrate deliberate indifference on the part of Gautreaux. Thus, her proposed "amended claim" is insufficient.

Stewart's proposed "amended claims" also allege that Gautreaux negligently hired Scott. When considering negligent hiring claims, the Fifth Circuit has held that deliberate indifference exists where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights. *Gros v. City of Grand Prairie*, 209 F.3d 431, 434-35 (5th Cir.

2000) (quotations omitted) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998), *cert. granted*, 525 U.S. 1098, *and cert. dismissed*, 119 S. Ct. 1493 (1999)). Thus, there must be a strong connection between the background of the particular applicant and the specific violation alleged. *Id.* (citing *Bryan Cty.*, 520 U.S. at 412).

Here, Stewart's proposed "amended claims" allege that Scott "did not have the training and background to properly manage booking and records." Her proposed "amended claims" fail, however, to allege any additional facts related to Scott's background or Gautreaux's background check and/or hiring process. Stewart also fails to allege that Gautreaux hired Scott, despite the likelihood that he would inflict the particular type of injury suffered by Stewart. Thus, her proposed "amended claim" is insufficient.

Stewart's proposed "amended claims" further allege that Gautreaux failed to enact a policy to prevent the particular type of injury suffered by her.[5] As mentioned above, liability for failure to promulgate a policy requires that the defendant have acted with deliberate indifference. *Porter*, 659 F.3d at 446. "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

---

[5] In the alternative, Stewart argues that, to the extent Gautreaux did enact a policy, such policy was violated by Scott and/or Gautreaux failed to enforce such policy. In the alternative, she argues that, to the extent such a policy did exist and Scott followed the policy, such policy was ineffective and it was unreasonable for Gautreaux to require Scott to follow an ineffective policy. However, without the identification of some policy or custom, Stewart's alternative allegations are insufficient.

According to the Fifth Circuit, an official policy is:

(1) [a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] . . . or by an official to whom the [entity] has delegated policy-making authority; or

(2) [a] persistent, widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002) (citing *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)). A plaintiff may establish a policy or custom based on isolated decisions made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered. *Cozzo*, 279 F.3d at 289 (citing *City of Saint Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996)).

Here, Stewart has not identified a policy or custom. Nor has she pled sufficient facts to demonstrate that final authority rested with Gautreaux, or that he made the decision to incarcerate her for an additional month.

For these reasons, the Court concludes that Stewart has failed to plead sufficient facts to demonstrate that Gautreaux's actions were objectively unreasonable. Thus, her individual capacity claims against him must be dismissed.

### 3. Stewart's Complaint Fails to Allege Sufficient Facts to Demonstrate that Scott's Actions Were Objectively Unreasonable

A state actor may be liable under Section 1983 in his individual capacity only if the plaintiff can establish that he "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). This standard requires more than conclusory allegations. The plaintiff must allege specific facts giving rise to a constitutional violation. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (*citing Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)).

Here, Stewart alleges that during her incarceration she "sent paperwork to booking and records inquiring as to the reason that she was still being held after the charge was dropped." (Doc. 1-1, ¶ 14.) She further alleges that Scott, who "is over booking . . . records . . . [and] prisoner transfers," "failed to act on the repeated requests of Stewart." (Doc. 1-1, ¶ 15.) According to Stewart, "[p]ulling the docket sheet and court minutes is a simple matter that may be accomplished any [*sic*] computer at the prison. A simple phone call could have discovered the error. Nothing was done." (Doc. 1-1, ¶ 24.) Stewart alleges that Scott's failure to act amounted to negligence or callous indifference to her constitutional rights. (Doc. 1-1, ¶ 25.)

14

The Court first notes that there is no constitutional remedy for alleged damages caused by negligence on the part of officials. *See Daniels v. Williams*, 474 U.S. 327, 336 (1986). Further, even accepting Stewart's allegations as true, it cannot be said that she has alleged a plausible claim that Scott was personally involved in the alleged constitutional violation, or that there is a casual connection between his actions and her incarceration.

Stewart's complaint fails to allege that Scott received the written inquiries Stewart allegedly sent to the booking and records department. Nor does her complaint allege that she made Scott personally aware of the continuing constitutional violation. Indeed, it is unclear from Stewart's complaint exactly who is responsible for her being returned to the prison and incarcerated for an additional month after the charges against her were dismissed. Just because Scott *could have* accessed the docket sheet and court minutes on a computer or called the state courthouse, does not mean he was personally involved in the acts causing Stewart to remain incarcerated. In summary, Stewart has failed to allege sufficient facts to demonstrate a causal connection between Scott's specific conduct and her continuing incarceration. Thus, her individual capacity claims against him must be dismissed.

**B.     Stewart's Official Capacity Claims Against Gautreaux and Scott**

In addition to suing Defendants in their individual capacities, Stewart has sued them in their official capacities. A suit against a defendant in his official capacity is

equivalent to a suit against the entity with whom he is employed, in this case East Baton Rouge Parish.[6] *Nickles v. Stephens*, No. 05-6295, 2006 U.S. Dist. LEXIS 53813, at *5 (E.D. La. June 26, 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 467 (5th Cir. 1999)). *See also Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 690, n. 55 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.").

Defendants, as representatives of East Baton Rouge Parish, can be liable under Section 1983 in their official capacities only if their action(s) were in execution of an unconstitutional policy or custom which inflicted injury or damage upon Stewart. *Id.*, at *5-6 (citing *Monell*, 436 U.S. at 694); *see also Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied*, 555 U.S. 813 (2008) ("In a suit brought against a municipality official in his official capacity, the plaintiff must show that the municipality has a policy or custom that caused his injury."). Thus, to state a claim, Stewart must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation. *McClure v. Biesenbach*, 355 Fed. Appx. 800, 803 (5th Cir. 2009) (citing *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

Here, Stewart has failed to identify a policy or custom. Instead, she concedes that "[w]hether there was a policy and practice in place at the East Baton Rouge

---

[6]The Court notes that Stewart has not named East Baton Rouge Parish or the City of Baton Rouge as Defendants.

Parish Jail pertaining to the holding or imprisonment or persons, which policy was violated and which caused or contributed to the injuries, is unknown at this time." (Docs. 3, p. 4; 1-1, ¶ 27.) She further concedes that she "has not at this time perfected a *Monell* claim since some discovery will be necessary to determine whether and identify any policies and procedures, *vel non*, in place at the time of the false imprisonment that may have prevented the false imprisonment." (Doc. 3, p. 6.) However, Defendants do not deny that a policy or custom exists. Nor do Defendants deny that they acted in accordance with a Parish and/or Prison policy or custom.

Given the nature of Stewart's allegations, the duration of the alleged constitutional deprivation, and the liberal pleading requirement with respect to Section 1983 official capacity claims, the Court concludes that Stewart shall be permitted to conduct limited discovery to determine whether the East Baton Rouge Parish has a policy or custom related to the timely release of prisoners, and/or whether there is a pattern of similar constitutional deprivations at the East Baton Rouge Parish Prison. Thus, Defendants' request that the Court dismiss Stewart's official capacity claims shall be denied at this time.

### IV.   Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' **Motion to Dismiss (Doc. 2)** is **GRANTED IN PART** and **DENIED IN PART**.

- Defendants' request that this Court dismiss Plaintiff's individual capacity claims is **GRANTED**. Plaintiff's claims against Defendants, in their individual capacities, are **DISMISSED**.

- Defendants' request that this Court dismiss Plaintiff's official capacity claims is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall be granted leave to conduct **limited discovery** to determine whether the East Baton Rouge Parish has a policy or custom related to the timely release of prisoners, and/or whether there is a pattern of similar constitutional deprivations at the East Baton Rouge Parish Prison. Such discovery must be completed by **June 21, 2013**.

**IT IS FURTHER ORDERED** that the deadline to file a motion for leave to amend the complaint, or add new parties, claims, counterclaims, or cross-claims is extended to **July 12, 2013**. All other deadlines shall remain in effect. *See* Doc. 10.

Baton Rouge, Louisiana, this 21st day of May, 2013.

                                                                                  _____
                                                                                  **BRIAN A. JACKSON, CHIEF JUDGE**
                                                                                  **UNITED STATES DISTRICT COURT**
                                                                                  **MIDDLE DISTRICT OF LOUISIANA**